1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CLAUDIA RENDON, GEORGE RENDON, PRISCILLA RENDON, LAWRENCE RENDON, RICARDO RENDON, JOHN NUNEZ, JR., ALFRED HERNANDEZ, AND VIVIAN CENTENO,**<br><br>                    **Plaintiff,**<br><br>        **v.**<br><br>**CITY OF FRESNO, JERRY DYER, individually and in his official capacity, MICHAEL MANFREDI, individually and in his official capacity, MARCUS K. TAFOYA, individually and in his official capacity, and DOES 1 through 50 inclusive.**<br><br>                    **Defendants.** | **1:06-CV-01851 OWW SMS**<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT** |

**I.   <u>INTRODUCTION</u>**

Plaintiffs' Claudia Rendon ("C. Rendon"), George Rendon ("G. Rendon), Priscilla Rendon ("P. Rendon"), Lawrence Rendon ("L. Rendon"), Ricardo Rendon ("R. Rendon"), John Nunez Jr. ("Nunez"), Alfred Hernandez ("Hernandez") and Vivian Centeno ("Centeno") (collectively, "Plaintiffs") bring this lawsuit against the City of Fresno, Jerry Dyer its police chief, and officers Michael Manfredi and Marcus Tafoya, individually and in their official capacity, as well as Officer Belinda Anaya, in her individual and official capacities (collectively "Defendants").

1

Plaintiffs first claim is for a violation of civil rights under 42 U.S.C. § 1983, the second and third claims are brought under California Civil Code §§ 52 and 52.1, and the fourth claim is Malicious Prosecution. Chief Dyer, Manfredi, Tafoya, and Anaya were at all times allegedly employed as police officers for the City of Fresno Police Department, and acted in the course and scope of their official employment. Plaintiffs seek damages for the acts allegedly committed under color of law and in deprivation of the Plaintiffs' rights secured by the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable seizure and excessive force.

Defendants move to dismiss the entire complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendants alternatively move for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

## II.  **PROCEDURAL BACKGROUND**

Plaintiffs filed their complaint May 11, 2007, for violations of California Civil Code §§52 and 52.1, Malicious Prosecution, and violation of the Plaintiffs' Fourth and Fourteenth Amendment rights under the Civil Rights Act. (Doc. 24, First Amended Complaint).

Defendants filed a motion to dismiss June 4, 2007, for failure to state a claim or in the alternative for a more definite statement. (Doc. 27, Motion to Dismiss).  On June 21, 2007, Plaintiffs filed Opposition to Defendants' motions. (Doc.

28, Memorandum/Response in Opposition re Motion to Dismiss). On July 2, 2007, Defendants filed a response to Plaintiffs' Opposition to Defendants' motions. (Doc. 29, Reply to Response to Motion re Motion to Dismiss).

### III.  **FACTUAL BACKGROUND**

On March 5, 2005, Plaintiffs were at a welcome home from Iraq party for G. Rendon. During the party two men were involved in a confrontation, but members of the party separated the two men. After the men were restrained by the people at the party, approximately twelve to fifteen Fresno police officers arrived at the party.

Plaintiffs allege the Officers entered the party and began using excessive force by hitting people with batons and throwing them on the floor. Plaintiffs allege that there were no fights or physical confrontations that could be viewed by the officers to justify excessive force to control the situation.

In the complaint Plaintiffs set forth specific allegations against each officer that Plaintiffs Hernandez, Centeno, Nunez, L. Rendon and C. Rendon were inside the house when the Officers arrived. They observed Officer Tafoya enter the residence and begin striking people at the party with his expandable baton. Hernandez was later arrested by Officer Tafoya and charged with numerous misdemeanor violations. Centeno was violently and aggressively shoved and pushed by various officers. Officer Tafoya also arrested Centeno and allegedly made sexually

inappropriate comments to her. Centeno was charged with numerous misdemeanor violations. While inside the house, Officer Tafoya entered the room where Plaintiff Nunez was sitting and swung his expandable baton at Nunez's head. Nunez was able to block some of the swings with his arms, but Officer Tafoya struck Nunez on the legs causing him to fall to the ground. At that point, Officer Tafoya stomped on Nunez's back with his boot. It is also alleged that Tafoya arrested Nunez, and charged him with numerous felonies.  L. Rendon was attacked and struck by Officer Tafoya. L. Rendon was arrested and charged with various felonies. C. Rendon was allegedly struck on her left thigh by Officer Tafoya. Another Plaintiff, R. Rendon, was inside a bedroom when he heard a commotion in the hallway. When he got into the hallway he attempted to give assistance to Gabriel and Rebecca Gonzalez who had been assaulted by Officer Tafoya. R. Rendon was ordered outside by an officer, and violently thrown off of the porch and on the ground by Officer Tafoya.  R. Rendon was allegedly knocked unconscious and then woke up.  Tafoya allegedly arrested R. Rendon and later charged him with numerous felonies.

Officer Manfredi was also among the officers who began hitting people at the party with batons and throwing them to the floor. Hernandez observed Officer Manfredi taunt various Plaintiffs. At the party Centeno and her mother had a gun pointed at their head by Officer Manfredi as they pleaded with him to stop assaulting their relative. When L. Rendon retreated from

**4**

Officer Tafoya's attack, Officer Manfredi caught him and threw him to the ground.

Officer Anaya is the last identified officer who entered the house and began hitting people at the party with batons and throwing them to the floor. When the officers entered the home, P. Rendon was upstairs sleeping with her baby. She heard the commotion and got up to see what was going on. When she saw the officers, she went outside to find her husband, G. Rendon. She found her husband and sat next to him on the curb. At that time, it is alleged that Officer Anaya violently grabbed P. Rendon by the hair and pulled her to her feet. Officer Anaya arrested P. Rendon at the direction of Officers Tafoya and Manfredi.

Plaintiffs and several other people were taken to the local hospital for treatment of the injuries that they sustained from the incident.

Chief of Police, Jerry Dyer, and the City of Fresno are sued because they allegedly knew of Officer Manfredi's and Officer Tafoya's history of excessive force and illegal police conduct, and despite this knowledge, allowed these Officers to stay on the force.

All three Officers are alleged to have prepared false police reports, which contained false and misleading information to show probable cause for all Plaintiffs' arrests.

On August 14, 2006, the felony charges against Nunez, G. Rendon, L. Rendon and R. Rendon were dismissed. On August 28,

1

2    2006, the various misdemeanor charges against Hernandez and

3    Centeno were dismissed. P. Rendon was ordered to appear in court

4    regarding potential misdemeanor charges, but when she did the

5    court advised her that charges were never filed against her.

6

7                      **IV.   MOTION TO DISMISS**

8        Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss if

9    a plaintiff fails "to state a claim upon which relief can be

10   granted."  However, motions to dismiss under Fed. R. Civ. P.

11   12(b)(6) are disfavored and rarely granted.  The question before

12   the court is not whether the plaintiff will ultimately prevail;

13   rather, it is whether the plaintiff could prove any set of facts

14   in support of his claim that would entitle him to relief.  *Ohel*

15   *Rachel Synagogue v. United* States, 482 F.3d 1058, 1060 (9th Cir.

16   2007) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

17   "A complaint should not be dismissed unless it appears beyond

18   doubt that a plaintiff can prove no set of facts in support of

19   his claim which would entitle him to relief." *Van Buskirk v.*

20   *CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).

21       In deciding whether to grant a motion to dismiss, the court

22   "accept[s] all factual allegations of the complaint as true and

23   draw[s] all reasonable inferences" in the light most favorable to

24   the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th

25   Cir. 1999); *See also Rodriguez v. Panayiotou*, 314 F.3d 979, 983

26   (9th Cir. 2002).  A court is not "required to accept as true

27

28

**6**

1

2 allegations that are merely conclusory, unwarranted deductions of

3 fact, or unreasonable inferences." *Sprewell v. Golden State*

4 *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

5

6

7 **A. <u>Rule 8 Pleading Standard</u>**

8 A complaint must "contain a short and plain statement of the

9 claim showing that the pleader is entitled to relief." Fed. R.

10 Civ. P. 8(a)(2). The "short and plain" statement must give the

11 defendant "fair notice of what the plaintiff's claim is and the

12 grounds upon which it rests." *Walsh v. Nev. Dep't of Human Res.*,

13 471 F.3d 1033, 1036 (9th Cir. 2006) (quoting *Conley v. Gibson*,

14 355 U.S. 41, 47 (1957)). The Ninth Circuit has held that "[a]

15 party need not plead specific legal theories in the complaint, so

16 long as the other side receives notice as to what is at issue in

17 the case." *Sagana v. Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004)

18 (quoting *Am. Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d

19 781, 786 (9th Cir. 1982)). Courts have a "duty...to construe pro

20 se pleadings liberally." *Zichko v. Idaho*, 247 F.3d 1015, 1020

21 (9th Cir. 2001); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The

22 pleadings of pro se litigants are "held to less stringent

23 standards than formal pleadings drafted by lawyers." *Castro v.*

24 *United States*, 540 U.S. 375, 386 (2003) (quoting *Haines v.*

25 *Kerner*, 404 U.S. 519, 520 (1972)). "However, 'a liberal

26 interpretation of a [pro se] complaint may not supply essential

27

28

**7**

elements of the claim that were not initially pled.'" *Peterson v. Cal. Dep't. Of Corr. & Rehab.*, 451 F.Supp.2d 1092, 1099 (D. Cal. 2006) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

## B. <u>Legal Background</u>

### i. 42 U.S.C. § 1983

In order to sue a local government entity or its employees in a federal court for civil rights violations, a plaintiff must rely on statutory provisions that permit individuals to seek relief in federal court. 42 U.S.C. § 1983, under which Plaintiff brings this suit, provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 "creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1056 (9th Cir. 2002). "In order to allege a claim upon which relief may be granted under § 1983, a plaintiff must show that he or she has been deprived of a 'right secured by the Constitution and ... law of the United States' and

**8**

that the deprivation was 'under color' of state law." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9ᵗʰ Cir. 2003) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978) (quoting 42 U.S.C. § 1983)). Here, Plaintiffs allege several Fourth and Fourteenth Amendment violations. Plaintiffs charge both local government entities and individual police officers in this suit. Section 1983 extends liability differently to local governments than to individuals.

### ii *Monell*

Local government entities can be directly liable under § 1983 for monetary, declaratory, and injunctive relief, but only if the allegedly unconstitutional actions were taken pursuant to a "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers." *Neveau v. City of Fresno*, 392 F.Supp.2d 1159, 1171 (D. Cal. 2005) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 659, 690 (1978)). Alternatively, local government entities can be liable for adopting an unconstitutional custom, even if such custom has not received formal approval through the body's official decision-making channels. *Id*. quoting *Monell* at 690-691. A local government entity cannot be held liable under § 1983 simply because it employs someone who has acted unlawfully. Instead, it is when "execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy," inflicts the injury

**9**

that the government as an entity is responsible. *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694)). "A single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under *Monell*, even though the decision is not intended to govern future situations." *Haughn v. Brosseau*, 351 F.3d 372 (9th Cir. 2003)(quoting *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992)) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)). The local government will be found responsible if it can be established that "the individual who committed the constitutional tort was an official with final policymaking authority and that the challenged action itself was an act of official governmental policy." *Sepatis v. City & County of San Francisco*, 217 F.Supp.2d 992, 1005 (D. Cal. 2002).

### iii. Officer Liability

Individual local government officers can be named as defendants either in their personal or official capacities. A suit against an individual officer in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Wolfe v. Strankman*, 392 F.3d 358, 365 (9th Cir. 2004) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). As such, to state a claim against an individual officer in his official capacity, a plaintiff must allege an unconstitutional "policy statement, ordinance, or

decision officially adopted and promulgated by that body's officers." *Neveau v. City of Fresno*, 392 F.Supp.2d 1159, 1171 (D. Cal. 2005) (quoting *Monell*, 436 U.S. at 659, 690)). In contrast, a claim against an individual local government officer acting in his or her personal capacity is quite different from a *Monell* claim against a local government entity. A plaintiff suing an individual officer in his or her personal capacity is not required to establish any connection between the alleged unlawful act and a governmental "policy or custom." "[R]egardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Sepatis* at 996 (quoting *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991)).

## V. <u>DISCUSSION</u>

### A. <u>California Tort Claims Act</u>

Defendants first argue that Plaintiffs failed to bring their claims against the City of Fresno as required by the California Tort Claims Act, Cal. Gov. Code Section 911.2. A plaintiff seeking to bring tort claims against a government entity must present those claims to the government entity within the limitations period, either six months or one year, depending on the nature of the tort alleged:

> A claim relating to a cause of action for death or for injury to person or to personal property or growing

> crops shall be presented as provided in Article 2
> (commencing with Section 915) not later than six months
> after the accrual of the cause of action. A claim
> relating to any other cause of action shall be
> presented as provided in Article 2 (commencing with
> Section 915) not later than one year after the accrual
> of the cause of action.

Cal. Gov. Code § 911.2(a).

Here, Plaintiffs' tort claims arose on March 5, 2005. Plaintiffs did not present their claims to the City of Fresno until they filed this complaint on September 22, 2006, more than a year after the causes of action arose.

The City's motion to dismiss state law claims under Cal. Gov. Code Section 911.2(a) is **GRANTED WITHOUT LEAVE TO AMEND, AS AT ARGUMENT ON THESE MOTION, PLAINTIFFS' COUNSEL STATED THERE WAS NO BASIS FOR TOLLING THE CLAIMS.**

## B. Official Capacity Claims Against Defendants are Redundant

Defendants assert that the official capacity claims against Defendants Dyer, Manfredi, Tafoya, and Anaya ("Defendant Officers") should be dismissed as redundant because the City of Fresno is a named defendant.

In *Luke v. Abbott*, 954 F.Supp. 202 (C.D. Cal. 1997), plaintiffs Fredrick Luke and The Luke Family Trust brought a claim against the County of Orange and the County's District Attorney Michael Capizzi, in his official capacity.  The Luke Court held that "[there] is no longer a need to bring official-capacity actions against local government officials, for under

*Monell*, …, local government units can be sued directly for damages and injunctive or declaratory relief." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)).  In its analysis of the facts of the case with respect to the question of official capacity suits, the *Luke* court referred to the Supreme Court's discussion in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The *Luke* court stated,

> "After the *Monell* holding, it is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity.  To do so only leads to a duplication of documents and pleadings, as well as wasted public resources for increased attorneys fees. A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant." *Id.* at 204

In their Motion to Dismiss, Defendants refer to the *Luke* case to provide support for their argument that official capacity claims against the Defendant officers should be dismissed. (Doc. 27, Motion to Dismiss, June 4, 2007). Defendants claim that according to *Monell*, and later *Luke*, it is redundant to bring official capacity claims against a government officer and the government entity. (*Id.*)  In their response to Defendants' motion, Plaintiffs state that

1

2   "Defendants' reliance on the *Luke* case is flawed when viewed in

3   context of the present lawsuit." (Doc. 28, Memorandum/Response

4   in Opposition re Motion to Dismiss, June 21, 2007).  Plaintiffs

5   state that official capacity claims against an officer are

6   redundant and should be dismissed when the officer is named in

7   his/her official capacity only.(*Id.*) Plaintiffs allege that

8   because the Defendants in the present case are sued in both

9   their official and individual capacities, Defendants' request

10  to dismiss the official capacity claims should be denied. (*Id.*)

11  Plaintiffs allege that because of the "dual nature in which the

12  police officer Defendants have been named, the concerns of the

13  *Luke* court in regard to the duplication of documents and

14  pleadings, as well as wasted public resources for increased

15  attorneys fees, is not applicable." (*Id.* at 4).

16      The distinctions between the *Luke* case and the present

17  case which were made by Plaintiffs are minimal and have no

18  legal bearing on the outcome of the decision.  Plaintiffs'

19  attempt to distinguish between the present case and the *Luke*

20  case has no influence on the law .  The *Luke* court which relied

21  on *Monell* held that the official capacity claims against an

22  officer of the government must be dismissed when the local

23  government entity is also named as a defendant. *Luke v. Abbott*

24  at 203.  Here, Plaintiffs bring official capacity claims

25  against the Defendant officers as well as the City of Fresno

26  and therefore the official capacity claims against the officers

27

28

**14**

are redundant. The claims against the officers under §1983 in their official capacities must be dismissed.

Motion to dismiss the civil rights claims against Defendant Officers in their official capacities is **GRANTED**.

### C. Plaintiffs Allege Sufficient Facts to Support a Cause of Action Against Police Chief Jerry Dyer in his individual Capacity

Defendants move to dismiss Plaintiffs' claim against Chief Dyer in his individual capacity.  Defendants argue that Plaintiffs cannot state a claim against Dyer, because Plaintiffs do not allege that Dyer was physically present on March 5, 2005.  "A supervisor is only liable for constitutional violations of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).  In a 1983 civil rights action, "there is no respondeat superior liability." *Wilkins v. Ramirez*, 455 F.Supp.2d 1080, 1108 (D. Cal. 2006) (citing *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984)). However, an official can be found liable in his individual capacity if it is alleged that, 1. there was an actual "involvement in the constitutional deprivation, or 2. a sufficient causal connection between the supervisor's wrongful

15

conduct and the constitutional violation." *Wesley v. Davis*, 333

F.Supp.2d 888, 892 (D. Cal. 2004) (citing *Hansen v. Black*, 885

F.2d 646 (9th Cir. 1989)).  Furthermore, a supervisory official

can be found liable if it is alleged that the official

"'implemented a policy so deficient that the policy itself is a

repudiation of constitutional rights...'" *Id.*

In *Larez v. Los Angeles*, 946 F.2d 630 (9th Cir. 1991), the

district court reasoned that Defendant Chief of Police Gates

would be liable in his individual capacity if he "sets in

motion a series of acts by others, or knowingly refused to

terminate a series of acts by others, which he knew or

reasonably should [have] known, would cause others to inflict

the constitutional injury." *Larez v. Los Angeles*, 946 F.2d

630, 646 (9th Cir. 1991).  It was alleged that although

Defendant Gates was not at the site of the incident that gave

rise to this claim he was allegedly involved in the

"perpetuation of unconstitutional policies or customs of

excessive force, illegal searches including official tolerance

for the destruction of property during such searches, and

inadequate citizen complaint procedures which have the effect

of encouraging the excessive use of force." *Id.* at 635.

Plaintiffs do not allege that Defendant Dyer was present

on the night of March 5, 2005.  Plaintiffs instead claim that

"Defendant Dyer [was] well aware of Defendant Manfredi, and

Defendant Tafoya's history of excessive force and illegal

police conduct." (Doc. 24, First Amended Complaint, May 11,

**16**

2007, at ¶39).   Plaintiffs allege that Defendant Dyer not only tolerated said conduct, but he actively participated in retaining these officers, covering up said illegal activity, and encouraging the conduct."  (*Id.*)

Plaintiffs further allege "Defendant City of Fresno and Defendant Dyer knew...or should have known of the illegal and improper searches and seizures, and excessive force being conducted by Defendant Officers."   According to Plaintiffs, in spite of his knowledge, Defendant Dyer "failed to take appropriate measures in reckless disregard of Plaintiffs' constitutional and statutory rights." (*Id.* at ¶40).   These allegations are sufficient to state a claim against Dyer in his individual capacity for violations of 42 U.S.C. § 1983.

Defendants' motion to dismiss the claims against Dyer in his individual capacity is **DENIED.**

## VI.   MOTION FOR A MORE DEFINITE STATEMENT

"Under the liberal pleading standards, 'pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim.'" *Castillo v. Norton*, 219 F.R.D. 155, 163 (D. Ariz. 2003) (citing *Resolution Trust Corp. v. Dean*, 854 F.Supp. 626, 624 (D. Ariz. 1994)) (quoting *A.G. Edwards & Sons, Inc. v. Smith*, 736 F.Supp. 1030, 1032 (D. Ariz. 1989)). Federal Rules of Civil Procedure 12(e) provides:

>     If a pleading to which a responsive pleading is
> permitted is so vague or ambiguous that a party cannot
> reasonably be required to frame a responsive pleading, the

**17**

party may move for a more definite statement before
interposing a responsive pleading.  The motion shall point
out the defects complained of and the details desired.  If
the motion is granted and the order of the court is not
obeyed within 10 days after notice of the order or within
such other time as the court may fix, the court may strike
the pleading to which the motion was directed or make such
order as it deems just.

Fed. R. Civ. P. 12(e).  However, a Rule 12(e) motion for a
more definite statement must be considered in light of Rule 8's
liberal pleading standards in federal court.  *Neveau v. City of
Fresno*, 392 F.Supp.2d 1159, 1169 (D. Cal. 2005).

A rule 12(e) motion is "proper 'only where the complaint
is so indefinite that the defendant cannot ascertain the nature
of the claim being asserted.'" *Neveau v. City of Fresno*, 392
F.Supp.2d 1159, 1169 (D. Cal. 2005) (quoting *Famolare, Inc. v.
Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D. Cal.
1981)).  The court must deny the motion if "the complaint is
specific enough to apprise the defendant of the substance of
the claim being asserted." *Neveau v. City of Fresno*, 392
F.Supp.2d 1159, 1169 (citing *Bureerong v. Uvawas*, 922 F.Supp.
1450, 1461 (C.D. Cal. 1996)).

The Court may also deny the motion if the detail sought by
a motion for more definite statement is obtainable through
discovery. *See Id.*; *See also Davidson v. Santa Barbara High
Sch. Dist.*, 48 F.Supp.2d 1225, 1227 (C.D. Cal. 1998) (citing
*Beery v. Hitachi Home Elecs. (Am.), Inc.*, 157 F.R.D. 477, 480
(C.D. Cal. 1993)) (citing *Famolare, Inc.*, 525 F.Supp. at 949)).
"Thus, the class of pleadings that are appropriate subjects for

**18**

a motion under Rule 12(e) is quite small—the pleading must be sufficiently intelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed, but it must not be so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed.) §1376.

Whether to grant a Rule 12(e) motion for a more definite statement lies within the wide discretion of the district court. *See Id.* §1377. However, "[m]otions for more definite statement are viewed with disfavor, and are rarely granted." William W. Schwarzer, A. Wallace Tashima, and James M. Wagstaffe, Federal Civil Procedure Before Trial §9:351 (2000) (citing *In re American Int'l Airways, Inc.*, 66 B.R. 642, 645 (E.D. Pa. 1986)).

**A.   Plaintiffs' Illegal Search and Seizure Claim**

Defendants move for a more definite statement on the First claim and state that it is indefinite as to whether false arrest is claimed.

In their complaint, Plaintiffs allege that the force used by Defendants and several other police officers was excessive and did not warrant the actions taken by Defendants. (Doc. 24, First Amended Complaint, May 11, 2007, at ¶24). Plaintiffs allege that Defendants, "used excessive force in seizing and

**19**

arresting Plaintiffs and others resulting in various injuries being sustained." (*Id*. at ¶26).

Plaintiffs make the following allegations in their complaint against Defendant Tafoya:

1. Plaintiff V. Centeno alleges that she was shoved aggressively by various unknown officers and arrested at Defendant Tafoya's orders. (*Id*. at ¶29).

2. Plaintiff J. Nunez, Jr. alleges that he was hit by Defendant Tafoya in the legs and was stomped on by Defendant Tafoya. As a result, Plaintiff John Nunez claims that these attacks by Defendant Tafoya were without just cause.  Plaintiff John Nunez, Jr. alleges that he was arrested under felony violations which were later dismissed. (*Id*. at ¶30).

3. Plaintiff C. Rendon alleges that Defendant Tafoya hit her on her left thigh with his baton without provocation. (*Id*. at ¶31).

4. Plaintiff G. Rendon alleges that Defendant Tafoya ordered that he be arrested without probable cause. Plaintiff George Rendon claims that the charges against him were later dismissed. (*Id*. at ¶32).

5. Plaintiff R. Rendon alleges that he was thrown off of a porch at the house in a violent manner by Defendant Tafoya, which left him unconscious. Plaintiff Ricardo Rendon claims that when he became alert, he was arrested without probable cause. Plaintiff Ricardo Rendon claims that the charges against him were later dismissed. (*Id*. at ¶35).

6. Plaintiff L. Rendon asserts that he was hit by Defendant Tafoya with a baton without provocation. (*Id*. at ¶34).

Plaintiffs also make the following claims against Manfredi.

1. Plaintiff V. Centeno alleges that she had a gun pointed at her head and her mother's head by

Defendant Manfredi and later charged with various misdemeanors which were dismissed. (*Id.* at ¶29).

2. Plaintiff L. Rendon claims that he was violently thrown on to the floor by Defendant Manfredi, then handcuffed and dragged across the lawn.  Plaintiff Lawrence Rendon claims that he was arrested and then the charges against him were dismissed. (*Id.* at ¶34).

Plaintiffs also bring a claim against Defendant Anaya. According to Plaintiff P. Rendon, Anaya grabbed her hair and pulled her to her feet then arrested her without probable cause. (*Id.* at ¶33).

The allegations in Plaintiffs' complaint assert that the actions taken by Defendants Tafoya, Manfredi, and Anaya towards Plaintiffs, were objectively unreasonable under the circumstances. Plaintiffs assert that Defendants did not have a warrant to arrest Plaintiffs. Plaintiffs further assert that Defendants' actions of violence and arresting Plaintiffs restrained Plaintiffs' freedom of movement.  Plaintiffs claim that their detention was unnecessarily painful and degrading and was an undue invasion of their privacy.

When considered in light of Rule 8's liberal pleading standards, Plaintiffs' allegations are not vague or ambiguous and a responsive pleading can be framed by Defendants. Defendants fail to point out the defects or the details desired in their motion for a more definite statement.  If the detail sought by Defendants can be determined through discovery, the court must deny their motion for a more definite statement.

However, based on the liberal pleading standards of Rule 8, the information provided by Plaintiffs is specific enough to give notice to Defendants that they have been sued for unreasonable seizure and false arrest.   Motion for a more definite statement is **DENIED**.[1]

### B. Plaintiff's Fourth Claim of Malicious Prosecution is Specific Enough to Notify Defendants' of the Substance of the Claim Being Asserted

Plaintiffs' fourth claim alleges a violation of their Fourteenth Amendment rights through malicious prosecution. Defendants move for a more definite statement claiming that "[i]t is unclear as to whether plaintiff is making a claim for an unlawful arrest and therefore, in this regard, plaintiffs' Amended Complaint is so vague and ambiguous that defendants cannot reasonably be required to frame a responsive pleading." (Doc. 27, Motion to Dismiss, June 4, 2007).

In the Ninth Circuit, the general rule is that a claim for malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to

---

[1]Here were no allegations stating that Defendant Dyer was present during the night of the incident.  There are no allegations that Defendant Dyer engaged in any illegal search and seizure.  As a result, Defendants' motion for a more definite statement against Defendant Dyer in his official capacity should be **GRANTED WITH LEAVE TO AMEND.**

provide a remedy. *Ayala v. KC Envtl. Health*, 426 F.Supp.2d 1070, 1083 (D. Cal. 2006) (citing *Bretz v. Kelman*, 562 773 F.2d 1026, 1031 (9th Cir. 1985)) (en banc); *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981). However, "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id.*; *Cline*, 661 F.2d at 112. In order to state a cognizable claim for malicious prosecution under § 1983 Plaintiff must demonstrate not only a deprivation of a constitutionally protected right, but also all of the elements of the tort under state law. *See Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994).

When a plaintiff brings a 42 U.S.C. § 1983 claim alleging malicious prosecution, the plaintiff "must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). In the state of California, a plaintiff alleging malicious prosecutions must prove that "(1) the prosecution was commenced by or at the direction of the defendant and was terminated in the plaintiff's favor, (2) that the prosecutor lacked probable cause to bring the charges against the plaintiff, and (3) that the prosecutor initiated and pursued

the prosecution with actual malice.  *Maleki v. L.A. Unified Sch. Dist.*, 160 Fed. Appx. 586, 590 (9th Cir. 2005) (citing *Sheldon Appel Co. V. Albert & Oliker*, 47 Cal. 3d 863 (Cal. 1989)).

### i.   Plaintiffs allege that the prosecution was commenced by or at the direction of Defendants

Plaintiffs must prove that "the prosecution was commenced by or at the direction of the defendant and was terminated in the plaintiff's favor." *Id*.  In determining what constitutes prosecution, the courts have established that "An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004). "Similar to other terminations short of a complete trial on the merits, a dismissal in the interest of justice satisfies this requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant. *Id*. at 1068 (citing *Minasian v. Sapse*, 80 Cal. App. 3d 823 (Cal. Ct. App. 1978)). "When such a dismissal is procured as the result of a motion by the prosecutor and there are allegations that the prior proceedings were instituted as the result of fraudulent conduct, a malicious prosecution plaintiff is not precluded from maintaining his action unless the defendants can establish

**24**

that the charges were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with his guilt." *Id*. at 1068.

### a.   Plaintiffs P. Rendon and C. Rendon

Plaintiff P. Rendon claims that Defendant Anaya arrested her without probable cause at the direction of Defendant Tafoya and Defendant Manfredi.  She claims that she was ordered to appear in court and only then was informed that charges were never filed against her.  Plaintiff P. Rendon was ordered to appear in court regarding potential misdemeanor charges. Plaintiff P. Rendon appeared in court and was advised that charges were never filed against her. (Doc. 24, First Amended Complaint, May 11, 2007, at ¶33).  Plaintiff C. Rendon admits she was not prosecuted.

Since neither C. Rendon or P. Rendon allege that formal charges were filed against them, Defendants' motion for a more definite statement as to the malicious prosecution claims on behalf of these plaintiffs is **GRANTED WITH LEAVE TO AMEND.**

### b.   Plaintiffs A. Hernandez, V. Centeno, J. Nunez, G. Rendon, L. Rendon, and R. Rendon

Plaintiff A. Hernandez claims that despite obeying all of the officers' commands on March 25, 2005 he was arrested without probable cause at the direction of Defendant Tafoya. Plaintiff A. Hernandez also claims that he was charged with

various misdemeanor violations which were subsequently dismissed. (*Id*. at ¶28).

Plaintiff V. Centeno alleges that she was violently and aggressively shoved and pushed by various officers and arrested at the direction of Defendant Tafoya. She claims that she was charged with various misdemeanor violations which were subsequently dismissed. (*Id*. at ¶29).

Plaintiff J. Nunez Jr. claims that Defendant Tafoya violently assaulted him without provocation. He also claims that he was arrested and charged with various felony violations which were subsequently dismissed. (*Id*. at ¶30).

Plaintiff G. Rendon claims that he too was arrested without probable cause at the direction of Officer Tafoya, and charged with various felony counts that were subsequently dismissed. (*Id*. at ¶32).

Plaintiff L. Rendon claims that he was handcuffed and dragged across the lawn and arrested without probable cause and charged with various felony offenses that were subsequently dismissed. (*Id*. at ¶34).

Plaintiff R. Rendon claims that he was knocked unconscious, violently arrested without probable cause by several Fresno Police Officers, and charged with various felony violations that were subsequently dismissed. (*Id*. at ¶35).

The grounds for the dismissal of the charges against each Plaintiff are unclear. It is also unclear whether the charges

were dropped as a result of a motion by the prosecutor. However, the complaint sufficiently alleges a favorable termination and constitutional deprivations of liberty and the right to be free from excessive force at the hands of Defendant Officers. The complaint also sufficiently alleges that Plaintiffs' prosecutions were commenced at the direction of the Fresno Police Department and were dismissed in Plaintiff's favor. These allegations are sufficient to establish the first element of *Maleki*.

### ii. Plaintiffs sufficiently allege that the charges and the prosecution that was filed against them was brought without probable cause

Plaintiffs also allege that the prosecutor lacked probable cause to bring the charges against them. According to Plaintiffs' complaint "the [police] reports purposefully contained false and misleading information which was designed to provide probable cause for the arrests of the Plaintiffs, and to cover up the illegal and unlawful conduct of the Defendants." (*Id*. at ¶41). Fabricated charges to wrongfully initiate criminal prosecution against an innocent civilian adequately satisfies the absence of the probable cause requirement.

### iii. Plaintiffs allege that their prosecution was initiated with actual malice

Lastly, Plaintiffs' allege that Defendant Officers knew that their false police reports would be relied on by the

Fresno County District Attorney's office to institute criminal proceedings against Plaintiffs.  Plaintiffs also claim that the District Attorney's office did, in fact, bring charges against defendants in reliance on the false reports.

Under Rule 8 these allegations are sufficient to place the Defendants on notice that a malicious prosecution claim is brought against them.  The complaint specifically alleges actual malice on behalf of Defendant Officers in writing their police report.  Whether there is any merit to these allegations is a matter of proof.  These allegations are sufficient to state a claim for malicious prosecution.

Defendant's motion for a more definite statement regarding the malicious prosecution claim as to Plaintiffs A. Hernandez, V. Centeno, J. Nunez, G. Rendon, L. Rendon, and R. Rendon are **DENIED.**

### VII. <u>CONCLUSION</u>

For the reasons stated above:

1.  Defendants' motion to dismiss state law claims under Cal. Gov. Code Section 911.2(a) is **GRANTED WITHOUT LEAVE TO AMEND, AS AT ARGUMENT ON THESE MOTIONS, PLAINTIFFS' COUNSEL STATED THERE WAS NO BASIS FOR TOLLING THE CLAIMS.**

2.  Defendants' motion to dismiss the civil rights claims against Defendant Officers in their official capacities is **GRANTED.**

3.  Defendants' motion to dismiss the claims against Dyer in his individual capacity is **DENIED.**

4.   Defendants' motion for a more definite statement is
     **DENIED.** Defendants' motion for a more definite statement
     against Defendant Dyer in his official capacity is **GRANTED
     WITH LEAVE TO AMEND.**

5.   Defendants' motion for a more definite statement as to the
     malicious prosecution claims on behalf of Plaintiffs C.
     Rendon and P. Rendon is **GRANTED WITH LEAVE TO AMEND.**

6.   Defendants' motion for a more definite statement regarding
     the malicious prosecution claim as to Plaintiffs A.
     Hernandez, V. Centeno, J. Nunez, G. Rendon, L. Rendon, and
     R. Rendon are **DENIED.**

     IT IS SO ORDERED.

**Dated:   August 3, 2007**            **/s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE